JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
JACK A. REITMAN (State Bar No. 283746)
jareitman@landaufirm.com
LANDAU LAW LLP
1880 Century Park East, Suite 1101
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Proposed Special Litigation Counsel for
Amy L. Goldman, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO DIVISION**

| | |
|---|---|
| In re<br><br>MAINSTREAM ADVERTISING, INC.,<br><br>a California Corporation,<br>                              Debtor. | Case No.: 1:17-bk-12980-MT<br><br>Chapter 7<br><br>Adv. No.: |
| AMY L. GOLDMAN, CHAPTER 7 TRUSTEE,<br><br>                              Plaintiff,<br><br>        v.<br><br>DANNY BIBI, f/k/a Daniel Khoshnood SHAHLA MISHKANIN, a/k/a Sheila (Shahla) Mishkan, an individual; IRAJ KHOSHNOOD an individual; MONETIZE.COM, INC., a Nevada corporation; AD.COM INTERACTIVE MEDIA INC., a California corporation; and DOES 1-20, Inclusive,<br><br>                              Defendants. | **COMPLAINT FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS [11 U.S.C. §§ 544, 547, 548, 550]; DECLARATORY RELIEF; TURNOVER; BREACH OF FIDUCIARY DUTY; PRELIMINARY AND PERMANENT INJUNCTION; DISALLOWANCE OF PROOFS OF CLAIM; EQUITABLE SUBORDINATION OF CLAIMS (WITH EXHIBIT)** |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Plaintiff is Amy L. Goldman, trustee (the "Trustee") for the chapter 7 bankruptcy estate

2   (the "Estate") of Mainstream Advertising, Inc. ("Mainstream").  The Trustee brings this adversary

3   proceeding on behalf of the Estate pursuant to 11 U.S.C. §§1106(a) and 1109(b).  As the Trustee

4   was not appointed until after Mainstream filed bankruptcy, the Trustee does not have personal

5   knowledge of the facts alleged below and therefore alleges those facts on information and belief.

6   <u>**JURISDICTION AND VENUE**</u>

7   1.   In accordance with the requirements of Local Bankruptcy Rule 7008-1, the San

8   Fernando Division of the United States Bankruptcy Court for the Central District of California

9   (the "Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334,

10  because the claims asserted herein arise under title 11 of the United States Code or arise in or

11  relate to the Chapter 7 case of the debtor, Mainstream, currently pending in the Bankruptcy Court

12  as Case No. 1:17-bk-12980-MT (the "Mainstream Bankruptcy Case").  The outcome of this

13  adversary proceeding will have a significant effect on the Estate because it will impact the amount

14  of the assets of the Estate and the amount of money available for distribution to creditors of the

15  Estate.  Certain of the claims for relief in this Complaint constitute a core proceeding under 28

16  U.S.C. § 157(b).  Regardless of whether this is a core proceeding, consent is hereby given to the

17  entry of final orders and judgment by the Bankruptcy Court.  Each defendant is hereby notified

18  that Fed. R. Bankr. P. 7008(a) requires each defendant to plead whether the claims for relief

19  alleged against such defendant are core or non-core and, if non-core, whether consent is given to

20  the entry of final orders and judgment by the Bankruptcy Court.

21  2.   Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409

22  because the Mainstream Bankruptcy Case is pending in this district and division.  This Court also

23  has personal jurisdiction over each of the defendants.

24  <u>**PARTIES**</u>

25  3.   Plaintiff Amy L. Goldman is the chapter 7 trustee of the Mainstream Estate.

26  4.   Defendant Danny Bibi, f/k/a Daniel Khoshnood ("Bibi") is an individual residing

27  in Los Angeles County, California.

28  / / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.     Defendant Shahla Mishkanin, a/k/a Sheila (Shahla Mishkan ("Mishkanin") is an individual residing in Los Angeles County, California.

6.     Defendant Iraj Khoshnood ("Khoshnood") is an individual residing in Los Angeles County, California.

7.     Defendant Monetize.com, Inc. ("Monetize"), is and at all relevant times was a legal entity incorporated under the laws of the State of Nevada.

8.     Defendant Ad.com Interactive Media, Inc. ("Ad.com"), is and at all relevant times was a legal entity incorporated under the laws of the State of California.

9.     The Trustee is not aware of the true names and capacities (whether individual, associate, corporate, or otherwise) of defendants Does 1 through 20, or any of them, and therefore sues said defendants, and each of them, by such fictitious names and will amend this Complaint to include their true names and capacities, when ascertained, together with appropriate charging allegations.

10.     Certain of the Doe defendants are (a) initial transferees of the avoidable transfers alleged in this Complaint and did not take such transferred property for value, in good faith and without knowledge of the voidability of such transfers or persons for whose benefit those transfers were made; (b) immediate or mediate or subsequent transferees of the initial transferee, other than good faith transferees that took for value; or (c) persons who participated in or aided and abetted the wrongful conduct of the other defendants as alleged in this Complaint and are liable for the damages alleged.

## GENERAL ALLEGATIONS

### *The Natural Person Defendants*

11.     Khoshnood and Mishkanin are, and at all relevant times were, husband and wife. They are the parents of Bibi.

### *Ownership, Operation and Purported Business of Entity Defendants*

12.     In or about 2005, Khoshnood and Mishkanin created Mainstream.  At all relevant times, (a) Mishkanin was the sole shareholder of record of, the President and/or Chief Executive Officer of Mainstream, was a person in control of Mainstream, and owed the duties of a fiduciary

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    to Mainstream; (b) Bibi was or held himself out to be a Vice President of Mainstream, was a

2    person in control of Mainstream, and owed the duties of a fiduciary to Mainstream; and (c)

3    Khoshnood generally operated Mainstream, was a person in control of Mainstream, was a de facto

4    officer of Mainstream, and owed the duties of a fiduciary to Mainstream.

5        13.    At all relevant time until its bankruptcy and the appointment of the Trustee,

6    Mainstream purportedly was in the business of facilitating its customers registering domain names

7    prior to the customer construction of websites for the domain name; i.e., without the domains

8    being associated with any services, to reserve the domains for future development and/or to

9    protect against possible cybersquatting.

10        14.    At all relevant times, Bibi was the sole shareholder of record of Monetize, the

11    Chief Executive Officer of Monetize, and a person in control of Monetize.

12        15.    At all relevant times, Monetize purportedly was in the business of providing a

13    supply side platform (SSP) for its customer publishers; *i.e.,* a computer software program that

14    would help customer online publishers sell display, video and mobile advertisements.  SSPs allow

15    publishers to connect their inventory to multiple ad exchanges, DSPs, and networks at once. SSPs

16    are designed to maximize the prices at which the publishers' advertisement impressions sell at.  A

17    SSP is basically the publisher equivalent of a DSP.

18        16.    At all relevant times Monetize was the sole shareholder of record of Ad.com, and

19    Bibi is, and at all relevant times was, a person in control of Ad.com.

20        17.    At all relevant times Ad.com purportedly was in the business of selling to direct

21    enterprise level advertisers of brand products.  Ad.com purportedly provided a demand side

22    platform (DSP)  for customer advertisers to access real time statistics of ad impressions (a count of

23    the total number of times digital advertisements display on someone's screen within the publisher's

24    network) across a range of publisher sites but targeted to specific users based on information such

25    as their location and their previous browsing behavior.  Publishers make their advertisement

26    impressions available through marketplaces called ad exchanges, and DSPs automatically decide

27    / / /

28    / / /

4

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

which of those impressions it makes the most sense for an advertiser to purchase DSPs are used by marketers to buy ad impressions from exchanges as cheaply and as efficiently as possible. Similar technology powers both SSPs and DSPs.

18.    At all relevant times, Mainstream, Monetize and Ad.com shared (a) office space at 6320 Canoga Ave., Suite 200, Woodland Hills, California; (b) computer servers, computers, telephone numbers and equipment, other business equipment and furnishings; and (c) employees and an outside payroll service.  At all relevant times, Mainstream paid a disproportionate and excessive amount of the cost of the office space, equipment and furnishings, employees, payroll services and other combined operations of Mainstream, Monetize and Ad.com (collectively, "Administrative Expenses").

19.    From approximately 2005 through approximately December 2016, Mainstream and Moniker Online Services, LLC ("Moniker") were engaged in business with each other.  In or about 2015 or 2016, disputes arose between Mainstream and Moniker which resulted in litigation between them.  On December 23, 2016, Moniker obtained a judgment against Mainstream in the amount of $294,485.04.

20.    On November 8, 2017, Moniker commenced an involuntary chapter 7 bankruptcy proceeding against Mainstream (the "Petition for Relief").  On March 7, 2018 the Bankruptcy Court entered an Order for Relief and Order to File Schedules, Statements and Lists.  Also on March 7, 2018, Ms. Goldman was appointed the Trustee for Mainstream Estate.

21.    On August 1, 2018, the Bankruptcy Court entered its Order Designating Bibi under Rule 9001(5) of the Federal Rules of Bankruptcy Procedure as the debtor (i.e., Mainstream).

22.    Throughout the course of the debtor's bankruptcy case through and including the date of this Complaint, Bibi actively frustrated and impeded the Trustee administration of the Estate.  Among other things, Bibi (a) repeatedly failed to appear for scheduled examinations by the Trustee; (b) when he did appear for examination, provided testimony under penalty of perjury that he knew or should have known, was materially false, misleading or incomplete; (c) filed pleadings signed by him under penalty of perjury that contained information which he knew or should have known was materially false, misleading or incomplete; (d) failed to turn over

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

1   documents failed to turn over documents that are property of the Estate or that he otherwise was

2   ordered to turn over; (e) failed to provide bank records and other documents concerning

3   Mainstream's receipt or disbursement of money prior to mid-2015 and after February 2017; (f)

4   failed to provide documents concerning Mainstream's customers or clients; and (g) when he

5   turned over computers that purportedly contain debtor business and financial records, he knew or

6   should have known that the Estate lack the funds necessary to install and access any such

7   information on those servers because the defendants had stripped the debtor of its monetary assets.

8   ***Recoverable Transfers made by Mainstream to or for the Benefit of Defendants***

9       23.    Exhibit 1 is a list of currently known monetary transfers that Mainstream made to

10  Monetize during the period from August 20, 2015 to February 22, 2017 (the "Monetary

11  Transfers").  The Monetary Transfers include Administrative Expenses paid by Mainstream to

12  Monetize.  The Monetary Transfers were made to Monetize for its benefit and the benefit of at

13  least Ad.com, Bibi, and Does 1-10, and Mainstream received no or less than adequate

14  consideration in exchange for those transfers.  Because the defendants have failed and refused to

15  cooperate with the Trustee, the Trustee does not currently know (a) the full extent of the

16  recoverable monetary transfers of Mainstream's property to defendants, which transfers were

17  made from and after 2005 through the date of the entry of the Order for Relief or (b) the names of

18  all persons who are the initial, immediate, mediate or subsequent transferees thereof from whom

19  such transfers may be recovered.  When such information is determined with certainty, the Trustee

20  will seek leave to amend this Complaint or will seek entry of judgment according to proof at trial.

21      24.    In addition to the Monetary Transfers, Mainstream also made transfers of its

22  valuable proprietary information about its customers, which information is not generally known to

23  the public, during the period from and after 2005 through the date of the entry of the Order for

24  Relief (the "Proprietary Information Transfers").  The Proprietary Information Transfers were

25  made to Monetize, Ad.com, and/or Bibi or for the benefit of one or more of those defendants and

26  Does 1-10.  Mainstream received no or less than adequate consideration in exchange for those

27  transfers.  Because the defendants have failed and refused to cooperate with the Trustee, the

28  Trustee does not currently know (a) the extent of the recoverable transfers of Mainstream's

Landau Law LLP
Attorneys at Law
Los Angeles, California

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 proprietary information, which transfers were made from and after 2005 through the date of the

2 entry of the Order for Relief or (b) the names of all persons who are the initial, immediate, mediate

3 or subsequent transferees thereof and from whom such transfers may be recovered.  When such

4 information is determined with certainty, the Trustee will seek leave to amend this Complaint or

5 will seek entry of judgment according to proof at trial.

6 <div align="center">**FIRST CLAIM FOR RELIEF**</div>

7 **(Against Bibi, Monetize, Ad.com, and Does 1-10, To Avoid Transfers of Money and Other**

8 **Property under 11 U.S.C. §§ 544(a) and (b), and Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

9      25.     The Trustee incorporates by reference and realleges paragraphs 1-24 of this

10 Complaint.

11      26.     During the four-year period immediately preceding the filing of the Petition for

12 Relief, Bibi directed and caused Mainstream to make the (a) Monetary Transfers to Monetize for

13 its benefit and the benefit of the other defendants; and (b) Proprietary Information Transfers  to

14 Monetize, Ad.com, and/or Bibi for their intended benefit and for the intended benefit of the other

15 defendants that, in each instance, exceeded the total amount, if any, that the defendants paid to

16 Mainstream prior to and during such time period in exchange therefor.  That excess amount or

17 value of the Monetary Transfers and the Proprietary Information Transfers during this time period

18 is referred to herein as the "4-Year Transfers."  **Exhibit 1** identifies the currently known Monetary

19 Transfers made by Mainstream to or for the benefit of the defendants during this period that are

20 part of the 4-Year Transfers.  The Trustee will seek leave of court to amend this claim for relief or

21 will seek judgment according to proof at trial when the exact amount or value of the 4-Year

22 Transfers is ascertained with certainty.

23      27.     The 4-Year Transfers were made by Mainstream with the actual intent to hinder,

24 delay, or defraud its creditors.  Specifically, Bibi caused Mainstream to make these transfers to or

25 for the benefit of the defendants to promote and advance their respective business interests, as well

26 as the personal interests of the individual defendants, and not to sustain or promote the business of

27 / / /

28 / / /

28.     Mainstream, even though Bibi (as well as Khoshnood and Mishkanin) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested to them that Mainstream had other pending creditor claims that were not being paid.

29.     The defendants did not take any of the 4-Year Transfers for a reasonably equivalent value and/or did not take such transfers in good faith.  Specifically, the defendants (a) knew that the transfers were of property belonging to Mainstream because the transfers were identified as emanating from that entity; (b) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those transfers was not for the benefit of and did not benefit Mainstream or its creditors; and (c) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested the value, if any, provided by them in exchange for such transfers conferred no or less than substantially equivalent value upon Mainstream and its creditors.

30.     At all relevant times, the 4-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Mainstream.  These creditors include Moniker, Redmon, Peyton & Barwell LLP and Diamond McCarthy LLP.

31.     To the extent that Mainstream made the 4-Year Transfers to (a) one or more of the defendants as the initial (first) transferee, those transfers also were made for the benefit of the other defendants; (b) one or more of the defendants, as the initial (first) transferee, and then transferred by that initial transferee to another defendant, as an immediate (subsequent) transferee, those transfers were for the benefit of the remaining defendants.

## SECOND CLAIM FOR RELIEF

### (Against Bibi, Monetize, Ad.com, and Does 1-10, To Avoid Transfers of Money and Other Property under 11 U.S.C. §548(a)(1)(A))

32.     The Trustee incorporates by reference and realleges paragraphs 1-24 of this Complaint.

/ / /

/ / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Landau Law LLP
Attorneys at Law
Los Angeles, California

33.     During the two-year period immediately preceding the filing of the Petition for Relief, Bibi directed and caused Mainstream to make the (a) Monetary Transfers to Monetize for its intended benefit and for the intended benefit of the other defendants; and (b) Proprietary Information Transfers to Monetize, Ad.com, and/or AIM for their benefit and the benefit of the other defendants that, in each instance, exceeded the total amount, if any, that the defendants paid to Mainstream prior to and during such time period in exchange therefor.  That excess amount is referred to herein as the "2-Year Transfers."  **Exhibit 1** identifies the currently known Monetary Transfers made by Mainstream to or for the benefit of the defendants during this period that are part of the 2-Year Transfers. The Trustee will seek leave of court to amend this claim for relief or will seek judgment according to proof at trial when the exact amount or value of the 2-Year Transfers is ascertained with certainty.

34.     The 2-Year Transfers were made by Mainstream with the actual intent to hinder, delay, or defraud its creditors.  Specifically, Bibi caused Mainstream to make these transfers to or for the benefit of the defendants to promote and advance their respective business interests, as well as the personal interests of the individual defendants, and not to sustain or promote the business of Mainstream, even though Bibi (as well as Khoshnood and Mishkanin) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that Mainstream had other pending creditor claims that were not being paid.

35.     The defendants did not take any of the 2-Year Transfers for a reasonably equivalent value and/or did not take such transfers in good faith.  Specifically, the defendants (a) knew that the transfers were of property belonging to Mainstream because the transfers were identified as emanating from that entity; (b) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested that the value, if any, that defendants provided in exchange for those transfers was not for the benefit of and did not benefit Mainstream or its creditors; and (c) knew or consciously or recklessly chose to ignore facts known to them that strongly suggested the value, if any, provided by them in exchange for such transfers conferred no or less than substantially equivalent value upon Mainstream and its creditors.

/ / /

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**THIRD CLAIM FOR RELIEF**

**(Against Bibi, Monetize, Ad.com, and Does 1-10, To Avoid Transfers of Money and Other**

**Property under 11 U.S.C. §§ 544(a), (b), and Cal. Civ. Code §§ 3439.05 and 3439.07)**

36.    The Trustee incorporates by reference and realleges paragraphs 1-24 and 26 of this Complaint.

37.    At all times from and after four years immediately preceding the filing of the Petition for Relief, Mainstream (a) was and remained insolvent or became insolvent as a result of each of the 4-Year Transfers; or (b) was engaged in business or was about to engage in business for which its remaining property was an unreasonably small capital; or (c) intended to incur or believed it would incur debts that would be beyond its ability to pay as those debts matured. Mainstream did not receive reasonably equivalent value in exchange for the 4-Year Transfers.

38.    To the extent that Mainstream made the 4-Year Transfers to (a) one or more of the defendants as the initial (first) transferee, those transfers also were made for the benefit of the other defendants; (b) one or more of the defendants, as the initial (first) transferee, and then transferred by that initial transferee to another defendant, as an immediate, mediate or subsequent transferee, those transfers were for the benefit of the remaining defendants.

39.    At all relevant times, the 4-Year Transfers were avoidable under California Civil Code §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Mainstream that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include Moniker, Redmon, Peyton & Barwell LLP and Diamond McCarthy LLP.

**FOURTH CLAIM FOR RELIEF**

**(Against Bibi, Monetize, Ad.com, and Does 1-10, To Avoid Transfers of Money and Other**

**Property under 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I), (II), or (III))**

40.    The Trustee incorporates by reference and realleges paragraphs 1-24 and 32 of this Complaint.

41.    At all times from and after two years immediately preceding the filing of the Petition for Relief, Mainstream (a) was and remained insolvent or became insolvent as a result of each of the 2-Year Transfers; or (b) was engaged in business or was about to engage in business

1  for which its remaining property was an unreasonably small capital; or (c) intended to incur or

2  believed it would incur debts that would be beyond its ability to pay as those debts matured.

3  Mainstream did not receive reasonably equivalent value in exchange for the 2-Year Transfers.

4          42.    To the extent that Mainstream made the 2-Year Transfers to (a) one or more of the

5  defendants as the initial (first) transferee, those transfers also were made for the benefit of the

6  other defendants; (b) one or more of the defendants, as the initial (first) transferee, and then

7  transferred by that initial transferee to another defendant, as an immediate, mediate, or (subsequent

8  transferee, those transfers were for the benefit of the remaining defendants.

9                          **FIFTH CLAIM FOR RELIEF**

10  **(Against Bibi, Monetize, Ad.com, and Does 1-10, To Avoid Transfers of Money and Other**

11                  **Personal Property under 11 U.S.C. § 547(b))**

12          42.    The Trustee incorporates by reference and realleges paragraphs 1-24, 26, 32, 36-38,

13  and 40-41 of this Complaint.  This claim for relief is brought as an alternative to the Third and

14  Fourth Claims for Relief, but solely with respect to those transfers which are alleged therein to be

15  voidable transfers made within the one year period immediately preceding the Petition Date, and

16  only to the extent that a defendant alleges to have given reasonably equivalent value in exchange

17  for such transfer and to be a good faith transferee of such transfer, and then only against that

18  defendant.

19          43.    At all relevant times, each of the defendants was, for the reasons set forth in

20  paragraphs 1-24 of the Complaint, an insider of Mainstream.

21          44.    During the one-year period immediately preceding the filing of the Petition for

22  Relief, Bibi directed and caused Mainstream to make transfers of its money and proprietary

23  information to or for the intended benefit of the defendants, and according to proof at trial (the "1-

24  Year Transfers").  To the extent, if any, that the 1-Year Transfers were in payment of an obligation

25  that Mainstream owed to the defendants, such obligation was an antecedent debt.

26          45.    As a result of the 1-Year Transfers, the defendants received from Mainstream more

27  than they would have received if such transfers had not been made and this case was a case under

28  chapter 7 of the Bankruptcy Code.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### SIXTH CLAIM FOR RELIEF

**(Against Bibi, Monetize, Ad.com, and Does 1-10, To Recover Avoided Transfers of Money and Other Personal Property under 11 U.S.C. § 550(a)(1), (a)(2) and Cal. Civ. Code §§ 3439.08(b))**

46.     The Trustee incorporates by reference and realleges paragraphs 1-24, 26-30, 32-34, 36-38, 40-41, and 43-45 of this Complaint.

47.     To the extent that the defendants, named and unnamed, are the initial transferees of the monetary and/or the proprietary information transfers referred to in this Complaint and such transfers are avoided, such defendants are strictly liable for their return to the Trustee.

48.     To the extent that the defendants, named and unnamed, are not the initial transferees of the Monetary Transfers and/or the Proprietary Information Transfers: (a) such defendants are immediate, mediate, or subsequent transferees of the initial transferee of such transfers; (b) such defendants did not take such transfers for value and/or in good faith and/or without knowledge of the voidability of such transfers; and (c) each of such transfers is recoverable from such defendants.

### SEVENTH CLAIM FOR RELIEF

**(Against Bibi, Monetize, Ad.com, and Does 1-10, for Declaratory Relief and Turnover under 11 U.S.C. § 542(a))**

49.     The Trustee incorporates by reference and realleges paragraphs 1-24 of this Complaint.

50.     If any defendant may claim to be the original purchaser or owner of any of the Proprietary Information Transfers identified as 4-Year Transfers, 2-Year Transfers or the 1-Year Transfers in the First through Fifth Claims for Relief in this Complaint and, for that reason, the transfer of such property is not avoidable and recoverable by the Trustee under 11 U.S.C. §§ 544(a) and/or (b), and the California Voidable Transfer Act, California Civil Code §§ 3439, *et seq.*, and/or §§ 547, 548(a)(1)(A), and/or 548(a)(B)(i) and (ii)(I), (II), or (III), an actual and genuine controversy exists between such defendant(s) and the Trustee as to the Estate's rights and interests in such property

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

51.     The Trustee contends that (a) the Estate owns 100% of the property of Mainstream in existence as of the date of the filing of the Petition for Relief, which property includes the Proprietary Information Transfers; (b) as the legal representative of the Estate, she holds exclusive, right, title and interest in such property on behalf of the Estate; (c) the Estate's ownership, right, title and interest in such property is free and clear of any and all other claims of ownership by defendant and, as the representative of the Estate, she is the only party authorized to use and dispose of such property except as otherwise authorized by applicable law and subject to perfected security interests that are not avoidable.

52.     The Trustee contends that defendants or one or more of them dispute to Trustee's contentions set forth in this claim for relief and claim ownership or other rights in such property.

53.     Pursuant to California Civil Code § 3439.07(3)(C), the Trustee is entitled to a judicial determination and a declaratory judgment that (a) the Estate is the sole owner of and holds exclusive right, title and interest in such property and the Trustee is the only party authorized by law to exercise such rights; (b) defendants' conduct in connection with their pursuit of their purported claims to such property is a violation of law; and (c) to the extent that a defendant files a claim against the Estate relating to the Proprietary Information Transfers, the Estate is not liable on such claim, and the defendant has no right to the proprietary information transfers.

54.     If this Court determines that the Estate is the rightful owner of the proprietary information transfers and, for that reason, such property is not voidable and recoverable by the Trustee under 11 U.S.C. §§ 544(a) and/or (b), and the California Voidable Transfer Act, California Civil Code §§ 3439, *et seq.,* and/or §§ 547, 548(a)(1)(A) and/or 548(a)(B)(i) and (ii)(I),(II), or (III), the Court should order that such property be turned over to the Trustee pursuant to 11 U.S.C. § 542(a) as property that the Trustee may use, sell, or lease under 11 U.S.C. § 363 *et seq.,* that is not of inconsequential value or benefit to the Estate.

## **EIGHTH CLAIM FOR RELIEF**

### **(Against Bibi, Khoshnood, Mishkanin, and Does 11-20 for Breach of Fiduciary Duty)**

55.     The Trustee incorporates by reference and re alleges paragraphs 1-24, 26-30, 32-34, 36-38, 40, 41, 43-45, 47, 48, 50-54 of this Complaint.

13

1    56.    At all relevant times, from the date of Mainstream's formation through and

2  including the date of the filing of this Complaint, defendants Bibi, Khoshnood, Mishkanin, and

3  Does 11-20 were de facto or de jure officers of and persons who controlled Mainstream and owed

4  the duties of a fiduciary to Mainstream, including the duties of undivided loyalty to Mainstream

5  and to act in Mainstream's best interests, which (a) prohibited each of them from undertaking or

6  participating in activities adverse to the interests of Mainstream (including, without limitation, by

7  causing or permitting Mainline to retain attorney Michael Berger as its bankruptcy counsel when

8  they know or should have known that he would, knowingly or unknowingly, be caused to perform

9  services adverse to the interests of Mainline); (b) required each of them, to the extent that

10  Mainstream was insolvent or on the verge of insolvency, to protect Mainstream's assets for the

11  benefit of its creditors; and (c) required each of them to account to and keep Mainstream, and to

12  the extent that Mainstream was insolvent or on the verge of insolvency, its creditors, fully

13  informed as to all matters pertaining to its/their respective interests.  Because defendants were

14  persons ultimately responsible for overseeing the day-to-day business operations and/or financial

15  performance of Mainstream and involved in supervising all aspects of Mainstream's business and

16  financial affairs, at all relevant times, each such defendant knew of or had a duty to inform

17  themselves concerning the dubious business and financial condition of Mainstream.  Despite this

18  knowledge, the defendants caused or permitted Mainstream to make the above described transfers

19  and other transfers (including transfers from Mainstream to Monetize, and from there to attorney

20  Michael Berger, Mainstream's former bankruptcy counsel) in violation of Mainstream's rights and

21  its obligations to its creditors.  In so doing, defendants breached their fiduciary duties of care and

22  loyalty to Mainstream, and were a direct and proximate cause of, and a substantial factor in

23  causing damage to Mainstream and its creditors.  Those damages exceed $500,000, and according

24  to proof at trial.

25    57.    The wrongful conduct of defendants as alleged in this claim for relief, was willful,

26  wanton, malicious, oppressive, outrageous and fraudulent, and justifies an award of punitive

27  damages in an amount sufficient to punish said defendants, and each of them, and deter future

28  conduct of this type.

14

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**NINTH CLAIM FOR RELIEF**

**(Against all Defendants for Preliminary and Permanent Injunction pursuant to Cal. Civ.**

**Proc. Code §§ 526(a), 527(a)) and Cal. Civ. Code §§ 3368, 3420, 3422, and 3439.07(a)(3)(A))**

58.    The Trustee incorporates by reference and realleges paragraphs 1-24, 26-30, 32-34, 36-38, 40, 41, 43-45, 47, 48, 50-54, 56, and 57 of this Complaint.

59.    Defendants' respective conduct with respect to the Monetary Transfers and the Proprietary Information Transfers (including the 4-Year Transfers, the 2-Year Transfers, the 1-Year Transfers and their proceeds), including any continued use of the Proprietary Information Transfers is a violation of the Estate's right, title and interest in and to such property and a violation of the Trustee's exclusive right of control over property of the Estate.

60.    Pursuant to Cal. Civ. Proc. Code §§ 526(a), 527(a)) and Cal. Civ. Code §§ 3368, 3420, 3422 and 3439.07(3)(A), the Court should issue a preliminary and permanent injunction restraining defendants and all others acting for them from interfering in any way with the Estate or its property and the Trustee's administration of such property for the benefit of the Estate and its creditors.

61.    The applicable principles of equity dictate that defendants be preliminarily and permanently enjoined from directly or indirectly using, transferring, selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving the assets of the Estate which have been fraudulently transferred to defendants by Mainstream via the machinations of defendants.

**TENTH CLAIM FOR RELIEF**

**(Against Bibi, Monetize, Ad.com, and Does 1-10, for Disallowance of Proofs of Claim**

**Pursuant to 11 U.S.C. § 502(d))**

62.    The Trustee incorporates by reference and realleges paragraphs 1-24, 26-30, 32-34, 36-38, 40, 41, and 43-45 of this Complaint.

63.    Defendants are in possession of or are intended beneficiaries of avoidable transfers that are recoverable for the benefit of the Estate, pursuant to 11 U.S.C. §§ 544, 547, 548 and 550,

1  and California Civil Code §§ 3439, *et seq*.  Defendants have failed and refused to disgorge those

2  avoidable fraudulent or preferential transfers that are recoverable for the benefit of the Estate.

3       64.     To the extent that defendants file proofs of claim against the Estate, and unless and

4  until those avoidable transfers are repaid in full to the Estate, no part of defendants' proofs of

5  claim are an allowable claim.

6  <center>**ELEVENTH CLAIM FO RELIEF**</center>

7  <center>**(Against Bibi, Khoshnood, Mishkanin, Monetize, Ad.com, and Does 11-20, for Equitable**</center>

8  <center>**Subordination of Claims and Liens Pursuant to 11 U.S.C. § 510(c))**</center>

9       65.     The Trustee incorporates by reference and realleges paragraphs 1-24, 26-30, 32-34,

10  36-38, 40, 41, 43-45, 47, 48, 50-54, 56, and 57 of this Complaint.

11       66.     11 U.S.C. § 510(c) provides:

12  Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the

13  court may under principles of equitable subordination, subordinate for purposes of

14  distribution all or part of an allowed claim to all or part of another allowed claim or all or

15  part of an allowed interest to all or part of another allowed interest.

16       67.     At all relevant times, Bibi, Khoshnood, Mishkanin, Monetize, Ad.com, and (acting

17  at the direction or under the control of or in concert with them) Does 11-20, engaged in inequitable

18  conduct, including the wrongful conduct described throughout this Complaint, toward Mainstream

19  by pilfering Mainstream's assets and property for their own benefit, which has resulted in injury to

20  Mainstream and its creditors.  That inequitable conduct has resulted in harm to Mainstream, its

21  creditors and the Estate in that Mainstream's general unsecured creditors are less likely to recover

22  the full amounts owed to them because of such conduct.

23       68.     Principles of equitable subordination require that any and all claims, whether or not

24  yet filed of record, and whether or not secured, of Bibi, Khoshnood, Mishkanin, Monetize,

25  Ad.com, and (acting at the direction or under the control of or in concert with them) Does 11-20

26  against the Estate be equitably subordinated to the allowed general unsecured claims against the

27  Estate, and such equitable subordination is consistent with the provisions and purposes of the

28  Bankruptcy Code.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against the defendants, and each of them, as follows:

1.      On the First Claim for Relief, for a judgment against the defendants that (a) avoids (as actual voidable transfers) the 4-Year Transfers from Mainstream to or for the benefit of the defendants and (b) imposes a constructive trust on the 4-Year Transfers and any proceeds thereof;

2.      On the Second Claim for Relief, for a judgment against the defendants that (a) avoids (as actual voidable transfers) the 2-Year Transfers from Mainstream to or for the benefit of the defendants as (actual) voidable transfers and (b) imposes a constructive trust on the 2-Year Transfers and any proceeds thereof;

3.      On the Third Claim for Relief, for a judgment against the defendants that (a) avoids (as constructive voidable transfers) the 4-Year Transfers from Mainstream to or for the benefit of the defendants as (constructive) voidable transfers and (b) imposes a constructive trust on the 4-Year Transfers and any proceeds thereof;

4.      On the Fourth Claim for Relief, for a judgment against the defendants that (a) avoids (as constructive voidable transfers) the 2-Year Transfers from Mainstream to or for the benefit of the defendants and (b) imposes a constructive trust on the 2-Year Transfers and any proceeds thereof;

5.      On the Fifth Claim for Relief, to the extent that the defendants, named and unnamed, are the initial transferees of the 4-Year Transfers and/or the 2-Year Transfers as alleged in the Third and Fourth Claims for Relief, and such transfers are treated as 1-Year Transfers, for a judgment against the defendants that (a) avoids (as insider preference payments) the 1-Year Transfers from Mainstream to or for the benefit of the defendants and (b) imposes a constructive trust on the 1-Year Transfers and any proceeds thereof are avoided as insider preference payments, such defendants are strictly liable for their return to the Trustee;

6.      On the Sixth Claim for Relief, for a judgment against the defendants that (a) to the extent that the defendants, named and unnamed, are the initial transferees of the 4-Year Transfers, the 2-Year Transfers, and/or the 1-Year Transfers, such defendants are strictly liable for their return to the Trustee; and (b) to the extent that the defendants, named and unnamed, are not the

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  initial transferees of the 4-Year Transfers, the 2-Year Transfers, and/or the 1-Year Transfers, such

2  defendants are immediate, mediate, or subsequent transferees of the initial transferee of such

3  payments, did not take such transfers for value and/or in good faith and/or without knowledge of

4  the voidability of such transfers and such transfers are recoverable from such immediate, mediate,

5  or subsequent transferees;

6         7.    On the Seventh Claim for Relief, for a judgment against the defendants

7  (a) declaring that the Trustee, as the legal representative of the Estate (i) is the sole owner of and

8  holds exclusive right, title and interest in the Proprietary Information Transfers and such

9  ownership is free and clear of any and all claims of ownership by the defendants, (ii) is the only

10  party authorized by law to exercise right, title and interest in the Estate and its property, including

11  the Proprietary Information Transfers, and is the only party authorized to exercise such rights, and

12  (iii) to the extent a defendant files a claim against the Estate relating to the Proprietary Information

13  Transfers, that the Estate is not liable on any claim by such defendant; and (b) requiring turnover

14  of the Proprietary Information Transfers to the Trustee;

15         8.    On the Eighth Claim for Relief, for a judgment against defendants for breach of

16  fiduciary duty for compensatory and exemplary damages in an amount to be determined at trial;

17         9.    On the Ninth Claim for Relief, for a judgment against defendants preliminarily and

18  permanently enjoining and preventing defendants from directly or indirectly using, transferring,

19  selling, assigning, pledging, hypothecating, encumbering, dissipating, distributing or moving the

20  fraudulently transferred assets of the Estate or the proceeds thereof and their personal assets

21  (except as necessary in the ordinary course of business or for normal living expenses), or from

22  interfering in any way with the Estate or its property, including the Proprietary Information

23  Transfers, until judgment in this proceeding has been satisfied;

24         10.   On the Tenth Claim for Relief, for a judgment against defendants disallowing any

25  and all of their respective proofs of claim, whether or not yet filed of record, against the Estate;

26         11.   On the Eleventh Claim for Relief, for a judgment against defendants equitably

27  subordinating any and all of their respective claims and/or liens, whether or not yet filed of record,

28  against the Estate to the allowed general unsecured claims against the Estate;

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1       12.    For pre and post-judgment interest at the applicable legal rate on all damages and

2  sums awarded to the Trustee; and

3       13.    For such other relief as the Court deems just and proper.

4

5  Dated:  March 5, 2020                     LANDAU LAW LLP

6

7                                    By   /s/ John P. Reiman

8                                        John P. Reitman

Proposed Special Litigation Counsel for Amy L.

9                                    Goldman, Chapter 7 Trustee for Mainstream
Advertising, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

Amy L. Goldman, Chapter 7 Trustee v. Danny Bibi, et al.
Complaint Exhibit 1
MAI Monetary 4-Year, 2-Year and 1-Year Transfers

| Date | Amount | Transferee |
| --- | --- | --- |
| 5/8/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 5/12/2015 | $52,656.30 | American Express Payment - Danny Khoshnood |
| 5/15/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 5/15/2015 | $2,149.81 | ADP TX/Financial Service - Mainstream Advertising |
| 5/15/2015 | $4,536.83 | ADP TX/Financial Service - Mainstream Advertising |
| 5/22/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 5/28/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 5/28/2015 | $2,149.79 | ADP TX/Financial Service - Mainstream Advertising |
| 5/28/2015 | $4,536.85 | ADP TX/Financial Service - Mainstream Advertising |
| 7/3/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 7/10/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 7/10/2015 | $2,149.80 | ADP TX/Financial Service - Mainstream Advertising |
| 7/10/2015 | $4,536.84 | ADP TX/Financial Service - Mainstream Advertising |
| 7/13/2015 | $3,677.72 | American Express Payment - Danny Khoshnood |
| 7/17/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 7/23/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 7/23/2015 | $2,149.80 | ADP TX/Financial Service - Mainstream Advertising |
| 7/23/2015 | $4,536.84 | ADP TX/Financial Service - Mainstream Advertising |
| 7/29/2015 | $584.00 | Legal Order Debit - Contact Franchise Tax Board Case # 71626915 |
| 7/29/2015 | $125.00 | Legal Order Fee Debit Case # 71626915 |
| 7/31/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 8/7/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 8/7/2015 | $2,149.80 | ADP TX/Financial Service - Mainstream Advertising |

EXHIBIT 1
20

| 8/7/2015 | $4,536.84 | ADP TX/Financial Service - Mainstream Advertising |
| 8/12/2015 | $2,956.08 | American Express Payment - Danny Khoshnood |
| 8/14/2015 | $1,735.36 | WT Fed#01638 JP Morgan Chase Bank |
| 8/14/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 8/20/2015 | $65.30 | ADP TX/Financial Service - Mainstream Advertising |
| 8/20/2015 | $2,149.82 | ADP TX/Financial Service - Mainstream Advertising |
| 8/20/2015 | $4,536.82 | ADP TX/Financial Service - Mainstream Advertising |
| 8/28/2015 | $150.85 | ADP Payroll Fees - Mainstream Advertising |
| 2/1/2016 | $35.00 | Overdraft Fee for Transaction on 1/29 $150.85 ADP Payroll Fees - Mainstream Advertising |
| 2/18/2016 | $75.00 | ADP Eepay/Garnwc Eepay/Gam - Mainstream Advertising |
| 9/2/2016 | $185,000.00 | WT Fed#05621 Bank of America Monetize.com |
| 9/30/2016 | $7,500.00 | WT Fed#02699 Bank of America Monetize.com |
| 10/6/2016 | $60,000.00 | WT Fed#04851 Bank of America Monetize.com |
| 10/19/2016 | $10,000.00 | WT Fed#06237 Bank of America Monetize.com |
| 10/27/2016 | $5,000.00 | WT Fed#06604 Bank of America Monetize.com |
| 11/16/2016 | $25,000.00 | WT Fed#07435 Bank of America Monetize.com |
| 12/5/2016 | $83,000.00 | WT Fed#00343 Bank of America Monetize.com |
| 12/28/2016 | $14,000.00 | WT Fed#05723 Bank of America Monetize.com |
| 1/4/2017 | $34,000.00 | WT Fed#00643 Bank of America Monetize.com |
| 1/19/2017 | $14,000.00 | WT Fed#01469 Bank of America Monetize.com |
| 1/31/2017 | $15,000.00 | WT Fed#00471 Bank of America Monetize.com |
| 2/22/2017 | $15,800.00 | WT Fed#05319 Bank of America Monetize.com |
| Total for 4-year transfers: | $571,712.05 | |
| Total for 2-year transfers: | $468,300.00 | |
| Total for 1-year transfers: | $200,800.00 | |

EXHIBIT 1
21

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br><br>Amy L. Goldman, Chapter 7 Trustee | **DEFENDANTS**<br>Danny Bibi, f/k/a Daniel Khoshnood; Shala Mishkanin, a/k/a Sheila (Shahla) Mishkann, an individual; Iraj Khoshnood an individual; Monetize.com, Inc., a Nevada Corporation; Ad.com Interactive Media Inc., a California Corporation; and Does 1-20.Inclusive |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Landau Law LLP<br>1880 Century Park East, Suite 1101<br>Los Angeles, CA 90067 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and Recovery of  Preferential and Fraudulent Transfers, 11 U.S.C. §§ 544(a) and (b), 548 (a)(1)(A) and (a)(1)(B), 547(b); 550(a)(1) and (a)(2) and Cal. Civ. Code §§ 3439.04(a)(1), 3439.05, 3439.07 and 3439.08; Declaratory Relief and Turnover, 11 U.S.C. § 542(a); Breach of Fiduciary Duty; Preliminary and Permanent Injunction, Cal. Civ. Code § 3439.07(a)(3)(A); Disallowance of Proofs of Claim, 11 U.S.C. § 502(d); Equitable Subordination of Claims and Liens, 11 U.S.C. § 510(c).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐[1] 13-Recovery of money/property - §548 fraudulent transfer
☐[2] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐[3] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐[4] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐[5] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  571,712.05 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Mainstream Advertising, Inc., a California Corporation | BANKRUPTCY CASE NO.<br>1:17-bk-12980-MT | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>San Fernando | NAME OF JUDGE<br>M. Tighe |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ John P. Reitman | | |
| DATE<br><br>March 5, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John P. Retitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN P. REITMAN (State Bar No. 80579)<br>jreitman@landaufirm.com<br>MONICA RIEDER (State Bar No. 263250)<br>mrieder@landaufirm.com<br>JACK A. REITMAN (State Bar No. 283746)<br>jareitman@landaufirm.com<br>LANDAU LAW LLP<br>1880 Century Park East, Suite 1101<br>Los Angeles, California 90067<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br>*Attorney for Plaintiff Amy L. Goldman, Ch. 7 Trustee* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| In re:<br>MAINSTREAM ADVERTISING, INC.,<br>a California Corporation,<br><br><br>Debtor(s). | CASE NO.: 1:17-bk-12980-MT<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| AMY L. GOLDMAN, CHAPTER 7 TRUSTEE,<br><br><br><br>Plaintiff(s)<br>Versus<br>DANNY BIBI, f/k/a Daniel Khoshnood; SHAHLA MISHKANIN, a/k/a Sheila (Shahla) Mishkan, an individual; IRAJ KHOSHNOOD an individual; MONETIZE.COM, INC., a Nevada Corporation; AD.COM INTERACTIVE MEDIA INC., a California corporation; and DOES 1-20, Inclusive<br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING<br>[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

> **Hearing Date:** _____
> **Time:** _____
> **Courtroom:** _____
>
> **Address:**
> ☐ 255 East Temple Street, Los Angeles, CA 90012
> ☐ 3420 Twelfth Street, Riverside, CA 92501
> ☐ 411 West Fourth Street, Santa Ana, CA 92701
> ☐ 1415 State Street, Santa Barbara, CA 93101
> ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**


**KATHLEEN J. CAMPBELL
CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____


By: _____
　　　　　　　　Deputy Clerk

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                               Page 2                               **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____   _____   _____
*Date*                          *Printed Name*                     *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.